## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**CRYSTAL FINANCIAL LLC**
**Two International Place, 17th Floor**
**Boston, MA 02110**


**CRYSTAL FINANCIAL SPV LLC**
**Two International Place, 17th Floor**
**Boston, MA 02110**          Case No. _____

      **Plaintiffs**

      **v.**

**David Ritz**
**9210 Fox Meadow Lane**
**Potomac, MD 20854**

      **Defendant**


## COMPLAINT

Plaintiffs Crystal Financial LLC ("Crystal LLC") and Crystal Financial SPV ("Crystal SPV") (collectively "Plaintiffs"), by and through undersigned counsel, hereby files this Complaint against Defendant David Ritz and states as follows:

## JURISDICTION AND VENUE

1. Crystal Financial LLC ("Crystal LLC") is a Delaware limited liability company headquartered in Boston, Massachusetts. None of its members is a citizen of Maryland.

2. Crystal Financial SPV LLC ("Crystal SPV") is a Delaware limited liability company headquartered in Boston, Massachusetts. None of its members is a citizen of Maryland.

3. On information and belief, David Ritz is a citizen of Maryland.

4. This Court has subject matter jurisdiction over the claim in this Complaint pursuant to 28 U.S.C. § 1332(a).

1

5. This Court is the proper venue for the adjudication of this dispute under 28 U.S.C. §§ 1391(b) and (c).

## FACTUAL BACKGROUND

6. In February 2009, Ritz Camera Centers, Inc. filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the U.S. Bankruptcy Court for the District of Delaware due, in part, to the advent of digital photography and the general economic downturn in the United States.  The assets of Ritz Camera Centers, Inc. were thereafter purchased out of bankruptcy by Ritz Camera & Image L.L.C. ("RCI").

7. RCI required funding to attempt to pursue its business, but RCI was a substantial credit risk due to, among other things, the growing impact of digital photography on its business model.  Nevertheless, on information and belief, RCI obtained financing from PNC Bank, N.A. and entered into a Revolving Credit and Security Agreement on November 6, 2009 (the "PNC Facility").  The PNC Facility had a maturity date of November 5, 2012.

8. RCI chose to refinance the PNC Facility on December 24, 2010, almost two years before its maturity date, by entering into a credit and security agreement (the "Credit & Security Agreement") between Crystal LLC, as agent and lender, and RCI, as borrower, that provided for a $15,000,000 revolving loan and a $10,000,000 term loan to RCI.

9. After receiving this additional funding, RCI defaulted on its obligations to Crystal LLC in April 2011.  To further assist RCI, Crystal LLC entered into a Forbearance Agreement with it on April 22, 2011.

10. To induce Crystal LLC to advance additional funds to RCI, Baltimore Boulevard Property LLP ("BBP") agreed to and expressly approved a mortgage loan from Crystal SPV (an affiliate of Crystal LLC) to BBP, the proceeds of which were used by BBP to

concurrently purchase a last-out participation in a portion of Crystal LLC's term loan interest in the Credit & Security Agreement.

11. To fund this transaction, BBP executed a $5,250,000 promissory note in favor of Crystal SPV (the "BBP Mortgage Note," attached as Exhibit A).  BBP used $4,915,000 of the proceeds from the BBP Mortgage Note to purchase a last-out participation from Crystal LLC of $4,915,000 of its term loan interest in the Credit & Security Agreement via a June 6, 2011 participation agreement (the "June 2011 Participation Agreement," attached as Exhibit B) and a concurrent amendment to the Credit & Security Agreement (the "June 2011 Credit & Security Agreement Amendment" attached hereto as Exhibit C).  The remaining $335,000 of the proceeds of the BBP Mortgage Note were used to pay transaction expenses and fees of BBP, Crystal SPV, and Crystal LLC.

12. The full purchase price of the participation ($4,915,000) was added to RCI's borrowing base, the effect of which was to increase RCI's available credit by the same amount.  The net result of the transaction was that BBP was indirectly loaning funds to RCI, using Crystal LLC and Crystal SPV as financers.

13. Additionally, as a result of internal restructuring of Crystal LLC, on May 6, 2011, prior to the June 2011 Credit & Security Agreement Amendment, Crystal LLC assigned $10,000,000 of its term loan commitment to its affiliate, Crystal SPV.  Immediately after giving effect to the June 2011 Participation Agreement and the June 2011 Credit & Security Agreement Amendment, Crystal SPV held a $10,000,000 term loan interest in the Credit & Security Agreement, Crystal LLC held 100% of the $10,085,000 revolving loan commitment, and Crystal LLC held a $4,915,000 term loan interest in the Credit &

Security Agreement which was subject to the June 2011 Participation Agreement with BBP.

14. Notwithstanding this additional liquidity, RCI (and Ritz Interactive, Inc., "Ritz Interactive") which became an additional borrower under the Credit & Security Agreement after it was acquired by RCI) defaulted on the loans from Crystal LLC and Crystal SPV in several respects from December 2011 to February 2012, including failing to maintain minimum required inventory amounts, failing to maintain minimum liquidity, failing to deliver required cash flow projections and failing to timely pay rental obligations.   Nevertheless, Crystal LLC and Crystal SPV entered into another Forbearance Agreement with RCI and Ritz Interactive on February 11, 2012.

15. RCI and Ritz Interactive filed voluntary petitions under Chapter 11 of the Bankruptcy Code on June 22, 2012 in the U.S. Bankruptcy Court for the District of Delaware.

16. The Credit & Security Agreement was refinanced by a June 28, 2012 Senior Secured Super-Priority Debtor-In-Possession Credit Agreement (the "DIP Agreement," attached as Exhibit D) between Crystal LLC as lender (the "DIP Lender") and as agent (the "DIP Agent") and RCI and Ritz Interactive as borrowers (the "Borrowers").   On the closing date of the DIP Agreement (June 28, 2012), the credit extended thereunder consisted of a $15,085,000 revolving loan commitment held by Crystal LLC as revolving lender and a $4,915,000 term loan (which was subject to BBP's participation interest) held by Crystal LLC as term loan lender.

17. Section 1.9(a)(i) of the DIP Agreement provided for a $750,000 closing fee (the "DIP Closing Fee") that was "fully earned on the Closing Date" and distributable to the lenders on a pro rata basis.   On the Closing Date (June 28, 2012), per the DIP Agreement, Crystal

LLC's pro rata share of the DIP Closing Fee on account of its revolving commitment (about 75%) was "fully earned."

18. Section 1.9(a)(i) of the DIP Agreement states:

> [RCI and Ritz Interactive] shall pay to [Crystal LLC, as agent], for the ratable benefit of the Lenders, a closing fee (the "Closing Fee") equal to $750,000, which shall be fully earned on the Closing Date. [RCI and Ritz Interactive] shall pay $300,000 of the Closing Fee on the Closing Date and the remaining $450,000 of the Closing Fee shall be payable on the Termination Date.

19. Crystal LLC's fully earned, ~75% pro rata share of the $750,000 DIP Closing Fee on account of its revolving loan commitments was a material part of the inducement that led it to enter into the DIP Agreement and all subsequent agreements relating to this controversy.

20. To assist RCI and Ritz Interactive in paying the DIP Closing Fee and to provide them with additional initial liquidity in the reorganization, RCI and Ritz Interactive were permitted to pay the DIP Closing Fee in two parts – $300,000 on the Closing Date of the DIP Agreement and $450,000 on the Termination Date of the DIP Agreement.

21. BBP's original participation agreement – the June 2011 Participation Agreement – was later modified by a July 3, 2012 Participation Consent and Agreement (the "July 2012 Participation Consent," attached as Exhibit E) among Crystal LLC as DIP Agent and DIP Lender, Crystal SPV as lender under the BBP Mortgage Note, and BBP, as participant in the DIP Agreement and borrower under the BBP Mortgage Note.

22. The purpose and effect of the July 2012 Participation Consent was to convert BBP's last-out participation interest of $4,915,000 of term loans under the original December 24, 2010 Credit & Security Agreement into a last-out participation interest of $4,915,000 of term loans in the DIP Agreement on substantially the same terms. The July 2012

Participation Consent did not alter or reallocate Crystal LLC's shares of the DIP Closing Fee on account of either its term loan interest (which was subject to BBP's participation interest) or its revolving loan commitments, each of which was "fully earned" on the June 28, 2012 closing date per Section 1.9(a)(i) of the DIP Agreement.

23. David Ritz was given an opportunity to review the DIP Agreement before it was executed by the parties and BBP (by David Ritz, its managing partner) expressly acknowledged receipt of a copy of the DIP Agreement in the July 2012 Participation Consent.  At all relevant times, David Ritz and BBP were represented by counsel.

24. As a result of, among other things, the commencement by RCI and Ritz Interactive of their Chapter 11 cases, events of default occurred under the BBP Mortgage Note.  On July 17, 2012, Crystal SPV, as lender under the BBP Mortgage Note, and BBP, as borrower under the BBP Mortgage Note, entered into a forbearance agreement (the "July 2012 Forbearance," attached as Exhibit F).  As part of the consideration for the July 2012 Forbearance, BBP executed the following release in Section 7 of that document:

> In consideration of, among other things, [Crystal SPV]'s execution and delivery of this Agreement, BBP… hereby forever agrees and covenants not to sue or prosecute against [Crystal SPV] and hearby forever waives, releases and discharges, to the fullest extent permitted by law, [Crystal SPV] from any and all claims… that [BBP] now has or hereafter may have, of whatsoever nature and kind, whether known or unknown, whether now existing or hereafter arising… against [Crystal SPV] in any capacity and its affiliates, subsidiaries, shareholders and "controlling persons" (within the meaning of the federal securities laws)… based in whole or in part on facts, whether or not now known, existing on or before [July 17, 2012], that relate to, arise out of or otherwise are in connection with: (i) the BBP Note or any other Loan Document or any transactions contemplated thereby or any actions or omissions in connection therewith, or (ii) any aspect of the dealings or relationships between or among BBP, on the one hand, and [Crystal SPV], on the other hand, relating to any or all of the

documents, transactions, actions or omissions referenced in clause
(i) hereof.

This release also applied to Crystal LLC as an affiliate of Crystal SPV.

25. By September 2012, it was clear that RCI and Ritz Interactive would have to wind down their businesses.  In connection with the wind down, RCI and Ritz Interactive's financing needs decreased and, accordingly, a September 10, 2012 amendment to the DIP Agreement (the "September 2012 DIP Agreement Amendment" attached as Exhibit G) among Crystal LLC, as DIP Agent and DIP Lender, and RCI and Ritz Interactive as Borrowers, amended the DIP Agreement to terminate the revolving commitments of $10,085,000 and convert and reduce the term loans of $4,915,000 to a revolving loan commitment of $4,900,000.

26. A September 10, 2012 Participation Consent and Agreement (the "September 2012 Participation Consent," attached as Exhibit H) among Crystal LLC as DIP Agent and DIP Lender, Crystal SPV as lender under the BBP Mortgage Note, and BBP, as a participant in the DIP Agreement and borrower under the BBP Mortgage Note, converted BBP's participation interest in the term loan portion of the DIP Agreement to an interest in the remaining revolving loan portion of the DIP Agreement.   The September 2012 Participation Consent did not alter or reallocate Crystal LLC's share of the DIP Closing Fee on account of its term loan interest (which was subject to BBP's participation interest) or its revolving loan commitment, each of which was "fully earned" on the June 28, 2012 Closing Date per Section 1.9(a)(i) of the DIP Agreement.

27. BBP, Crystal SPV, and Crystal LLC agreed in the September 2012 Participation Consent that Crystal LLC, as DIP Agent, would hold any funds repaid by RCI and Ritz Interactive under the DIP Agreement in a non-interest-bearing escrow account and re-lend those

funds as necessary.  Neither Crystal LLC, as DIP Agent, nor Crystal SPV, as the lender under the BBP Mortgage Note, had any obligation to apply these funds to the BBP Mortgage Note.  As a result of this arrangement, BBP, as participant in the DIP Agreement and borrower under the BBP Mortgage Note, Crystal LLC as DIP Agent and DIP Lender, and Crystal SPV as lender under the BBP Mortgage Note, expressly acknowledged and agreed that the amounts outstanding under the DIP Agreement might be less than the amounts outstanding under the BBP Mortgage Note.

28. BBP did not otherwise repay any amounts outstanding under the BBP Mortgage Note. As a result, the full amount of the BBP Mortgage Note remained outstanding and continued to accrue interest in accordance with its terms until it was repaid.

29. As of September 10, 2012, RCI and Ritz Interactive still owed the remaining $450,000 payment on the DIP Closing Fee.  The September 2012 DIP Agreement Amendment amended Section 1.9(a)(i) of the DIP Agreement solely to require the Borrowers to pay the remaining $450,000 of the DIP Closing Fee at a different date than originally required under the DIP Agreement.

30. RCI and Ritz Interactive continued to wind down their businesses.  A December 10, 2012 Amendment No. 4 to Senior Secured, Super-Priority Debtor-in-Possession Credit Agreement (the "December 2012 DIP Agreement Amendment" attached as Exhibit I) among Crystal LLC as DIP Agent and as DIP Lender, and RCI and Ritz Interactive as Borrowers further paved the way for the wind-down, leaving RCI and Ritz Interactive as Borrowers with a $4,000,000 revolving loan.

31. A December 10, 2012 Participation Consent and Agreement was entered into concurrently with the December 2012 DIP Agreement Amendment (the "December 2012

8

<u>Participation Consent</u>," attached as Exhibit J).  The December 2012 Participation Consent did not alter or reallocate Crystal LLC's share of the DIP Closing Fee on account of its term loan interest (which is subject to BBP's participation interest) and its revolving loan commitments, each of which was "fully earned" on the June 28, 2012 closing date per Section 1.9(a)(i) of the DIP Agreement.

32. David Ritz executed acknowledgments to both DIP Agreement Amendment 2 and DIP Agreement Amendment 4.

33. The DIP Agreement and the remaining revolving commitment thereunder was terminated on January 15, 2013.

34. RCI's and Ritz Interactive's obligations under the DIP Agreement remain outstanding.

35. RCI and Ritz Interactive are obligated to indemnify Crystal LLC, as DIP Agent and as DIP Lender, and Crystal SPV, as a "Related Person," for related litigation with BBP over the September 2012 Participation Consent pending in the United States District Court for the District of Maryland, captioned Baltimore Boulevard Property LLP v. Crystal Financial LLC and Crystal Financial SPV LLC, case no. 1:13-cv-842 (the "<u>Related Action</u>").

36. Section 9.6 of the DIP Agreement states:

> *[RCI and Ritz Interactive] agrees to indemnify, hold harmless and defend [Crystal LLC and Crystal SPV]... from and against all Liabilities* (including brokerage commissions, fees and other compensation) *that may be imposed on, incurred by or asserted against [Crystal LLC and Crystal SPV] in any matter relating to or arising out of, in connection with or as a result of* (i) any Loan Document, any Obligation (or the repayment thereof), the use or intended use of the proceeds of any Loan or any securities filing of, or with respect to [RCI and Ritz Interactive], (ii) any commitment letter, proposal letter or term sheet with any Person or *any Contractual Obligation, arrangement or understanding with any broker, finder or consultant, in each case entered into by or on*

> behalf of [RCI and Ritz Interactive] or any Affiliate of [it] in
> connection with any of the foregoing, (iii) with respect to any act,
> event or transaction related, contemplated in or attendant to any of
> the foregoing, any actual or prospective investigation, litigation or
> other proceeding... or (iv) any other act, event or transaction
> related, contemplated in or attendant to any of the foregoing...

37. Section 11.1 of the DIP Agreement defines "Related Persons" as:

> with respect to any Person, each Affiliate of such Person and each
> director, officer, employee, agent, trustee, representative, attorney,
> accountant and each insurance, environmental, legal, financial and
> other advisor . . . and other consultants and agents of or to such
> Person or its Affiliates.

38. Section 11.1 of the DIP Agreement defines "Affiliate" as:

> (a) any Person which, directly or indirectly, is in control of, is
> controlled by, or is under common control with such Person, or (b)
> any Person who is a director, managing member, general partner or
> officer (i) of such person, (ii) of any Subsidiary of such Person or
> (iii) of any Person described in clause (a) above.

39. For the purposes of the definition of "Affiliate," Section 11.1 of the DIP Agreement
defines "control" as:

> the power, direct or indirect, (x) to vote 10% or more of the Equity
> Interests having ordinary voting power for the election of directors
> of such Person or other Persons performing similar functions for
> any such Person, or (y) to direct or cause the direction of the
> management and policies of such Person whether by ownership of
> Equity Interests, contract or otherwise…

40. Upon information and belief, David Ritz has at least a 10% voting interest in both BBP
and RCI and/or otherwise has the direct or indirect ability to direct or cause the direction
of the management and policies of both BBP and RCI.

41. BBP is an "Affiliate" of RCI under the definition in Section 11.1 of the DIP Agreement
because they are under the common control of David Ritz.

42. Because BBP is an Affiliate of RCI, the 2012 Participation Consent among BBP, Crystal
LLC, and Crystal SPV is a contract with an Affiliate of RCI.

43. As a result of the foregoing, Section 9.6 of the DIP Agreement obligates RCI and Ritz Interactive to indemnify Crystal SPV and Crystal LLC for the cost of litigating the Related Action.

## THE DAVID RITZ GUARANTY

44. Because RCI and Ritz Interactive were a significant credit risk, Crystal LLC required additional security to continue lending to them.

45. To provide such additional security, David Ritz executed a Limited Guaranty on July 3, 2012 (the "David Ritz Guaranty," attached as Exhibit K).

46. Section 3 of the David Ritz Guaranty requires David Ritz to pay RCI's and Ritz Interactive's "Obligations" (up to $1,250,000) once the Guaranty Trigger Date is met.

47. Section 1(a) of the David Ritz Guaranty defines the Guaranty Trigger date as:

> the earlier of (i) the date the Agent shall have used due diligence and commercially reasonable efforts to collect the Guaranteed Obligations from, and exhausted its remedies against, the Borrowers or (ii) the occurrence of any act or omission to act or delay of any kind by any Borrower or the Guarantor with respect to the Agent's ability to realize upon any part of the Collateral, including, without limitation, any claim by any Borrower or the Guarantor that the Liens created under the Loan Agreement are unperfected, invalid or should be subordinated to the Lien of any other Person.

48. The David Ritz Guaranty incorporates the definition of "Obligations" from the DIP Agreement.  Section 1(a) of the David Ritz Guaranty does not define "Obligations," but states:

> Terms defined in the [DIP Agreement] and not otherwise defined herein have, as used herein, the respective meanings provided for therein.

49. Section 11.1 of the DIP Agreement defines "Obligations" broadly and specifically includes "any indemnification obligations payable" by RCI and Ritz Interactive.

11

50. As shown above, Section 9.6 of the DIP Agreement obligates RCI and Ritz Interactive to indemnify Crystal SPV and Crystal LLC for litigation with BBP in the Related Action.

51. Because David Ritz has guaranteed all Obligations and "Obligations" includes indemnifications, David Ritz is the guarantor of RCI's and Ritz Interactive's duty to indemnify Crystal SPV and Crystal LLC for the costs of litigating the Related Action with BBP.

52. Section 16(B) of the David Ritz Guaranty further obligates David Ritz to reimburse Crystal LLC, as DIP Agent, for expenses, including attorneys' fees, related to enforcement of the David Ritz Guaranty.  It states:

> [David Ritz] agree[s] to reimburse [Crystal LLC] for any reasonable costs and out-of-pocket expenses (including attorneys' fees) paid or incurred by [Crystal LLC] in connection with the collection and enforcement of amounts due under this Guaranty.

53. As of May 23, 2013, RCI and Ritz Interactive had closed all of their stores and sold all of their inventory, equipment, intellectual property and real property.   Accordingly, although a few assets (including causes of action which could take years to prosecute or sell and deposits yet to be recovered) remain, Crystal LLC has substantially exhausted its remedies against RCI and Ritz Interactive.

### Count I: Declaratory Judgment (David Ritz)

54. Paragraphs 1 through 53 are hereby repeated and realleged as if fully set forth herein.

55. RCI and Ritz Interactive are obligated by the DIP Agreement to indemnify Crystal LLC and Crystal SPV for litigation against BBP concerning the Participation Agreement in the Related Action.

56. David Ritz is the guarantor of RCI's and Ritz Interactive's obligations to Crystal LLC, including indemnification obligations.

57. The Guaranty Trigger Date has or will soon occur and David Ritz' guaranty obligation has now been triggered.

58. Crystal LLC is therefore entitled to collect under David Ritz indemnification obligation in an amount to be determined based on the course of the Related Action.

59. This Court has the authority to provide declaratory relief that declares the rights and legal relationships between the parties pursuant to 28 U.S.C. § 2201(a). This dispute does not fall within the causes of action excepted from declaratory relief by that statute.

## RELIEF REQUESTED

Crystal LLC and Crystal SPV respectfully request this Court to enter judgment in their favor and grant the following relief:

A.   A declaration that David Ritz is obligated to indemnify Crystal LLC for its costs (and its Affiliates' costs, which includes Crystal SPV) of litigating over the Participation Agreement with BBP in the Related Action (as Guarantor of RCI's and Ritz Interactive's obligations) and/or a judgment for the amount of such indemnification if the amount become ascertainable prior to judgment;

B.   Such other relief that the Court deems appropriate.

Date:  May 24, 2013                          **MORGAN, LEWIS & BOCKIUS LLP**


By:_____/s/_____
         Steven A. Luxton

1111 Pennsylvania Ave., NW
Washington, DC 20004-2541
Telephone:   (202)739-5452
Facsimile:   (202)739-3001

**ATTORNEY FOR PLAINTIFFS**

13